# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **UNILOC USA, INC., ET AL.** § <br>     **Plaintiffs,** § <br> § <br> **vs.** § <br> § <br> **SONY CORPORATION OF AMERICA,** § <br> **ET AL.** § <br>     **Defendants.** § | **CASE NO. 6:10-CV-373** <br> **PATENT CASE** |
| § <br> **UNILOC USA, INC., ET AL.** § <br>     **Plaintiffs,** § <br> § <br> **vs.** § <br> § <br> **DISK DOCTORS LABS, INC., ET AL.** § <br>     **Defendants.** § | **CASE NO. 6:10-CV-471** <br> **PATENT CASE** |
| **UNILOC USA, INC., ET AL.** § <br>     **Plaintiffs,** § <br> § <br> **vs.** § <br> § <br> **NATIONAL INSTRUMENTS CORP., ET** § <br> **AL.** § <br>     **Defendants.** § | **CASE NO. 6:10-CV-472** <br> **PATENT CASE** |
| § <br> **UNILOC USA, INC., ET AL.** § <br>     **Plaintiffs,** § <br> § <br> **vs.** § <br> § <br> **ENGRASP, INC., ET AL.** § <br>     **Defendants.** § | **CASE NO. 6:10-CV-591** <br> **PATENT CASE** |

| | § | |
|---|---|---|
| **UNILOC USA, INC., ET AL.** | § | |
|     Plaintiffs, | § | |
| | § | **CASE NO. 6:10-CV-636** |
| vs. | § | **PATENT CASE** |
| | § | |
| **BMC SOFTWARE, INC., ET AL.** | § | |
|     Defendants. | § | |

| | § | |
|---|---|---|
| **UNILOC USA, INC., ET AL.** | § | |
|     Plaintiffs, | § | |
| | § | **CASE NO. 6:10-CV-691** |
| vs. | § | **PATENT CASE** |
| | § | |
| **FOXIT CORPORATION, ET AL.** | § | |
|     Defendants. | § | |

| | § | |
|---|---|---|
| **SYMANTEC CORPORATION, ET AL.** | § | |
|     Plaintiffs, | § | |
| | § | **CASE NO. 6:11-CV-33** |
| vs. | § | **PATENT CASE** |
| | § | |
| **UNILOC USA, INC., ET AL.** | § | |
|     Defendants. | § | |

# **PLAINTIFFS' REPLY BRIEF ON CLAIM CONSTRUCTION**

# TABLE OF CONTENTS

I. DEFENDANTS ATTEMPT TO INCORPORATE AN EXTRANEOUS CAUSAL LIMITATION INTO THE TERM "PERMITS USE OF SAID DIGITAL DATA… ONLY IF…HAS MATCHED…" ................................................................................ 1

II. DEFENDANTS' ALLEGED DISCLAIMER IS NOT SUBSTANTIATED BY THE REEXAMINATION FILE HISTORY ................................................................................ 3

    A. Uniloc's description of the prior art does not constitute a disavowal under Federal Circuit precedent ................................................................................ 3

    B. Even if the reexamination history was "ambiguous," it would not support Defendants' alleged disclaimer ................................................................................ 5

    C. Defendants' alleged disclaimer is overbroad and subjective ........................................ 6

    D. In the alternative, only the Grundy typo checksum should be the subject of any alleged disclaimer ................................................................................ 7

III. THE GROUP B DEFENDANTS' ADDITIONAL DISCLAIMER IS NOT MANDATED BY THE RECENT REEXAMINATION ................................................................................ 8

    A. The Court is bound by the principle of *stare decisis* to adopt the construction of "licensee unique ID" affirmed by the Federal Circuit ................................................................................ 8

    B. The Court is not obligated to adopt the Examiner's NIIRC statement .......................... 9

    C. Uniloc did not disclaim the inputs used in Hellman ...................................................... 9

    D. In the alternative, if the Court feels clarification is necessary, it should be guided by the express observations in *Uniloc I* ................................................................................ 10

IV. CONCLUSION ................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*
    239 F.3d 1343 (Fed. Cir. 2001) ............................................................................... 7

*Computer Docking Station Corp. v. Dell, Inc.*
    519 F.3d 1366 (Fed. Cir. 2008) ......................................................................... 3-4, 6

*Cordis Corp. v. Medtronic Ave, Inc.*
    511 F.3d 1157 (Fed Cir. 2008) .................................................................................. 3

*Ecolab, Inc. v. FMC Corp.*
    569 F.3d 1335 (Fed. Cir. 2009) ................................................................................ 3

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*
    214 F.3d 1302 (Fed. Cir. 2000) ................................................................................ 2

*Enzo Biochem, Inc. v. Applera Corp.*
    599 F.3d 1325 (Fed. Cir. 2010) ................................................................................ 2

*Eolas Technologies, Inc. v. Adobe Systems, Inc.*
    No. 6:09-cv-446, Dkt. No. 989 (E.D. Tex. Sept. 23, 2011) ..................................... 8

*Gillette Co. v. Energizer Holdings, Inc.*
    405 F.3d 1367 (Fed. Cir. 2005) ................................................................................ 1

*Omega Eng'g, Inc. v. Raytek Corp.*
    334 F.3d 1314 (Fed. Cir. 2003) ................................................................................ 6

*Playtex Prods., Inc. v. Procter & Gamble Co.*
    400 F.3d 901, 906 (Fed. Cir. 2005) .......................................................................... 2

*Salazar v. Procter & Gamble Co.*
    414 F.3d 1342 (Fed. Cir. 2005) ................................................................................ 9

*Schindler Elevator Corp. v. Otis Elevator Co.*
    593 F.3d 1275 (Fed. Cir. 2010) ................................................................................ 4

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*
    595 F.3d 1340 (Fed. Cir. 2010) ................................................................................ 2

*Uniloc USA, inc. v. Microsoft Corp.*
    290 Fed. App'x. 337 (Fed. Cir. 2008) ................................................................. 8-10

*Uniloc USA, Inc. v. Microsoft Corp.*
    632 F.3d 1292 (Fed. Cir. 2011) ....................................................................................... 8

*Whetstone Elecs., LLC v. Xerox Corp*.
    No. 6:10-cv-278, 2011 U.S. Dist. LEXIS 89264 (E.D. Tex. Aug. 10, 2011) ...................... 9


**<u>OTHER</u>**

35 U.S.C. § 112, ¶4 ............................................................................................................ 2

# I. DEFENDANTS ATTEMPT TO INCORPORATE AN EXTRANEOUS CAUSAL LIMITATION INTO THE TERM "PERMITS USE OF SAID DIGITAL DATA…ONLY IF…HAS MATCHED…"

Defendants insist on proffering a construction of this simple phrase instead of relying on its plain and ordinary meaning. In doing so, they are seeking to incorporate an extraneous causal limitation that is not required by the plain claim language. Defendants' proposed construction is the reason why the Federal Circuit has stated that "[i]n construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005).

The claim language is unambiguous that the matching of the local licensee unique ID ("LUID") and the remote licensee unique ID ("RUID") is only a prerequisite to permitting the full use of the software (*i.e.*, "use mode"). Contrary to Defendants' assertions, the claim language does not state 'permits use of said digital data in said use mode on said platform *as the direct consequence of* matching of a LUID and the RUID.' Nor does it say '*when* the LUID and RUID match, *then* the use of the digital data is immediately permitted without any intervening action' or some similar variation. Defendants are essentially advocating for a construction in which the next line of source code after confirming a match must be the immediate grant of full access. Their proposed construction forbids any intervening action between the matching of the LUID and RUID and the grant of full access. However, the only limitations observed from the claim language are: (1) if the matching operation fails, full access will not be granted and (2) if the matching operation is successful, full access must be granted, but not necessarily immediately.

Unable to support their construction in light of the plain claim language, Defendants rely on preferred embodiments for importing their causal limitation. However, the Federal Circuit has long

warned against this practice. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010); *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005).

More damaging to Defendants' argument is that the specification discloses that the mode switching means can perform other functions before allowing full access (*i.e.*, "use mode") such as making sure the LUID or platform unique ID have not changed:

> Preferably, the system further includes platform unique ID generating means, wherein the mode switching means will permit the digital data to run in the use mode in subsequent execution of the digital data on the platform only if the platform unique ID has not changed.
>
> Preferably, the mode switching means permits operation of the digital data in the use mode in subsequent execution of the digital data only if the licensee unique ID generated by the local licensee unique ID generating means has not changed.[1]

Since the specification explicitly contemplates other activities occurring between the matching operation and allowing full access, Defendants' construction must be rejected.

Additionally, the relationship between independent claim 1 and dependent claims 3 and 7 further undermines Defendants' proposed causal limitation. Independent claim 1 describes the broad form of the invention whereby full access is permitted after the matching of the LUID and RUID. Dependent claim 3 adds an additional limitation of permitting full access provided the LUID has not changed. Claim 7 likewise narrows claim 1 by verifying that unique platform ID has not changed prior to granting full access. Thus, independent claim 1 must be broad enough to not conflict with the additional limitations/actions set forth in claims 3 and/or 7. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010); 35 U.S.C. § 112, ¶4. Defendants' causal limitation would forbid verification of the LUID and/or unique platform ID, rendering claims 3 and 7 superfluous. *See Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000) (refusing to adopt a claim construction that renders claim language superfluous).

---

[1] Exh. C at Col. 3:33-42. Exhibits A-F were submitted in connection with the supporting declaration of Steven W. Hartsell ("Hartsell Decl."), filed with Uniloc's Opening Brief on Claim Construction ("Opening Br.").

The Court should decline Defendants' invitation to re-draft the claims to include a causal limitation. *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1344 (Fed. Cir. 2009) ("It is likewise well-settled that courts generally may not re-draft claims; we must construe the claims as written.").

## II. DEFENDANTS' ALLEGED DISCLAIMER IS NOT SUBSTANTIATED BY THE REEXAMINATION FILE HISTORY

### A. Uniloc's description of the prior art does not constitute a disavowal under Federal Circuit precedent

The threshold is high for concluding that a patentee has disavowed subject matter. *See Cordis Corp. v. Medtronic Ave, Inc.,* 511 F.3d 1157, 1177 (Fed Cir. 2008) (explaining that for prosecution disclaimer to attach, the "alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable"). Because of this high standard, the Federal Circuit has explained "[p]rosecution disclaimer does not apply, for example, if the applicant simply describes features of the prior art and does not distinguish the claimed invention based on those features." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008). Based on this principle, Defendants' alleged disclaimer must fail because Uniloc's reexamination efforts focused on describing the cited art and educating the Examiner regarding certain features, not distinguishing the claims of the '216 Patent.

During the reexamination, the Examiner mistakenly believed that the Grundy typo checksum produced the registration code: "Grundy discloses an analogous algorithm for unique ID generation, wherein the unique ID, a registration code, is produced by performing a checksum of the user data component fields..."[2] In its opening brief, Uniloc provided an undisputed technical description of both the Hellman and Grundy patents.[3] That analysis shows that the Grundy typo checksum was a preliminary step to creating Grundy's "registration code" and, most important, the typo checksum does not produce the "registration code." Uniloc's reexamination was devoted to

---
[2] UNI075030. All references to UNIXXXXXX are found in Hartsell Decl. at Exh. D.
[3] Opening Br. at pp. 4-10.

3

explaining Grundy and that it was technically infeasible to combine Grundy and Hellman.[4]

Defendants have cherry-picked certain statements out of context to create the illusion of a checksum disclaimer. There are a few items that the Court should keep in mind when considering these statements. First, most of the statements are from Uniloc's reply to the first Office Action in which the Examiner proposed a § 103(a) obviousness rejection.[5] Since there was no anticipation rejection under § 102, there was no need for Uniloc to compare the '216 Patent to the cited references and show why certain limitations were not present. All Uniloc had to show was that the references cited by the Examiner could not be combined, which is what Uniloc did.

Next, none of these statements resulted in any claim amendments, which might otherwise be construed as disclaiming subject matter to overcome prior art. *See Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010). None of the '216 Patent claims were altered in reexamination, diminishing the probability of a disclaimer.

Finally, it is important for the Court to read Uniloc's reexamination statements in context. *Computer Docking Station,* 519 F.3d at 1378 ("the prosecution history must always receive consideration in context."). As shown below, Defendants have omitted key parts of the file history in their citations. The omitted parts, which are underlined below, bolster Uniloc's position that the reexamination was fundamentally an exercise in proving that Hellman and Grundy could not be combined.

- The invention implements a unique identifier that is associated with a licensee as a means for licensing execution (or controlling use) of software to (or by) an intended licensee. This feature is present in each of the independent claims. For example, in independent claims 1, 19 and 20, this feature is a "licensee unique ID." In claim 12 this feature is a "security key." In claim 17 this feature is a "registration key" and an "enabling key." <u>Hellman and Grundy both fail to disclose this claimed element.</u>[6]

- But as fully discussed above with respect to independent claim 1, a checksum is not unique

---

[4] See, for example, UNI075124 ("The Examiner's premise is technically incorrect.").
[5] UNI075022-30.
[6] UNI075102.

and therefore cannot be a unique identifier associated with a licensee. <u>Specifically, Grundy is not using the checksum to represent a security key, but rather uses the checksum of the user data as an indicator that the user data has been correctly entered. Grundy does not teach or suggest that the checksum represents a unique identifier of an intended registered user. Accordingly, as Grundy does not cure the Examiner's alleged deficiencies of Hellman, the references cannot be used to establish a prima facie case of obviousness.</u>[7]

- Therefore, a checksum cannot preserve the uniqueness of the input data. Grundy shows the input data to be the checksum routine in Fig. 2, 212, "ENTER NEW USER DETAILS." This is "new user data, such as the user's name, address and telephone number" (Grundy at 12:37-38) Such data might take up roughly one hundred bytes of data. A checksum of this data would not preserve its uniqueness; many different sets of user data could produce the same checksum. Therefore, the checksum is not a generator of unique identifiers. (*See*, Rosenblatt Dec., ¶62.) <u>Accordingly, Grundy does not cure the Examiner's alleged deficiencies of Hellman, and the two references cannot be used to establish a *prima facie* case of obviousness.</u>[8]

- <u>Again, for substantially the same reasons discussed above with respect to claim 1, Grundy does not cure the noted deficiencies in Hellman's disclosure.</u> As previously discussed, a checksum cannot preserve the uniqueness of the input data and thus the checksum is not a generator of unique identifiers. (See, Rosenblatt Dec., 62.) <u>Accordingly, as Grundy does not cure the Examiner' alleged deficiencies of Hellman, the references cannot be used to establish a prima facie case of obviousness.</u>[9]

- Uniloc also argued that Grundy's checksum did not generate "a licensee unique ID" because Grundy's checksum algorithm, by its very nature, destroys any uniqueness. (Reply, pp. 26-28.) <u>Because neither reference disclosed the claimed function – *i.e.*, generation of a licensee unique ID – Uniloc argued that the combination of references could not render obvious the independent claim.</u>[10]

- <u>The Office concluded that "[i]t is NOT agreed that a reasonable examiner would have found [the Grundy] reference important in determining the patentability of claim 1-20." (Order, p. 9.) The basis for this determination was that the Requestor attempted to rely on Grundy's checksums; and, according to the Office, Grundy's "*[c]hecksums are not unique fields, even if there [sic] are at least in part derived from unique data.*" (Order, p. 9.)</u>[11]

### B. Even if the reexamination history was "ambiguous," it would not support Defendants' alleged disclaimer

In order for Defendants to succeed in proving Uniloc made a disclaimer, Defendants need to point to a "clear and unmistakable" statement. Defendants' brief fails to do so. Rather, Defendants

---
[7] UNI075118.
[8] UNI075112-13.
[9] UNI075117.
[10] UNI075203-04. This excerpt is found in a summary of Uniloc's reply to the first Office Action.
[11] UNI75230 (emphasis in original).

5

rely on innuendo and supposition in the hope that the Court will go along. At best, Defendants can only argue that the reexamination history is ambiguous regarding whether Uniloc disclaimed subject matter or just described features of the prior art. Unfortunately for Defendants, the Federal Circuit has held that ambiguities in the prosecution history cannot be construed against Uniloc. *Computer Docking Station,* 519 F.3d at 1375 ("Prosecution disclaimer does not apply to an ambiguous disavowal."); *see also Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) (examining cases).

### C. Defendants' alleged disclaimer is overbroad and subjective

While Defendants only claim that Uniloc "unequivocally disclaim[ed] checksums,"[12] which Uniloc adamantly denies, they have not limited their alleged disclaimer to checksums. Rather, they also attempt to include "summers" and "summation algorithms" as allegedly disclaimed subject matter without citing to any support for their position. Defendants' brief fails to point to any statement that even mentions "summer" or "summation algorithms." Since these generation means were not at issue in the reexamination, it is impossible for Uniloc to have disclaimed them and the Court should reject Defendants' attempts to include them.

Defendants have also brushed off the subjectivity of their alleged disclaimer stating, without support, that "'data integrity' is a well-understood term to those of skill in the art."[13] Following Defendants' proposed path quickly leads to a quagmire as the term "data integrity" is never used in the specification and even a quick review reveals multiple and varying definitions for "data integrity." The Court's objective is to fashion a construction that can be applied objectively by a jury trying to determine infringement, not issue a construction ladened with additional terms of art that require further explanation. Defendants' alleged disclaimer would unwisely do just that.

Under Defendants' alleged disclaimer, an algorithm might infringe in one instance, but not

---

[12] Defendants' Br. at p. 10.
[13] Defendants' Br. at p. 14.

6

in another, based on the state of mind of the programmer(s). The alleged disclaimer would introduce a subjective test of intent into the infringement analysis, allowing a given Defendant to argue that while it may be true that an accused algorithm activates the software by matching the LUID and RUID, it cannot infringe because the programmer's intent was "really" just to ensure "data integrity" by testing whether there was a match between the data entered by a user and the data on the Defendant's activation server. The Federal Circuit has rejected constructions that would transform the infringement inquiry into a subjective analysis, and this Court should do the same. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1353 (Fed. Cir. 2001) (refusing to "inject subjective notions into the infringement analysis" and explaining "[w]e are not prepared to assign a meaning to a patent claim that depends on the state of mind of the accused infringer").

### D. In the alternative, only the Grundy typo checksum should be the subject of any alleged disclaimer

Assuming *arguendo* that Uniloc disclaimed any subject matter, which Uniloc adamantly denies, the only subject matter that could conceivably be subject to any perceived disclaimer is the Grundy typo checksum as used on the local (user's) machine to check the user input for typographical errors. During the reexamination, in explaining why the Grundy typo checksum does not produce a licensee unique ID, Uniloc stated "Grundy's checksum can only be used to indicate whether the user (i.e., the intended licensee) correctly entered the requested data."[14] Likewise, in its reply to the second Office Action, Uniloc said "the checksums described in Grundy are not cryptographic functions, but rather appear to be used to check, for example, for typographical data entry errors or transmission errors."[15] Thus, if the Court believes there has been any disclaimer, its effect should be limited to narrowing the meaning of "local licensee unique ID generating means" so that it excludes algorithms that consist only of "checksum functions on the user's computer used

---

[14] UNI075104.
[15] UNI075218.

only to check user input for typographical errors."

### III. THE GROUP B DEFENDANTS' ADDITIONAL DISCLAIMER IS NOT MANDATED BY THE RECENT REEXAMINATION

#### A. The Court is bound by the principle of *stare decisis* to adopt the construction of "licensee unique ID" affirmed by the Federal Circuit

This Court recently considered whether it is bound by the principle of *stare decisis* to adopt another district court's construction of a disputed term as affirmed by the Federal Circuit and concluded "[a]fter a thorough analysis of the case law, the answer is yes." *Eolas Technologies, Inc. v. Adobe Systems, Inc.*, No. 6:09-cv-446, Dkt. No. 989 (E.D. Tex. Sept. 23, 2011).[16] The *stare decisis* principle counsels against the additional "disclaimer" urged by Defendants.

The Federal Circuit affirmed that the proper construction of "licensee unique ID" is "a unique identifier associated with a licensee." *Uniloc USA, Inc. v. Microsoft Corp.*, 290 Fed. App'x. 337, 344 (Fed. Cir. 2008) ("*Uniloc I*"); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1299-1300 (Fed. Cir. 2011) ("*Uniloc II*"). The Federal Circuit arrived at its conclusion despite also observing that (1) "the licensee unique ID cannot be based *solely* on platform-related user information," and (2) the ID must be derived from some information that is unique *to* the user, not necessarily unique *about* the user. *Uniloc I*, 290 Fed. App'x. at 343-344.

During the reexamination, Uniloc merely urged the Examiner to follow the Federal Circuit's *Uniloc I* opinion. In doing so, it was evident that Hellman and Grundy did not satisfy *Uniloc I* and could not be combined. The Examiner ultimately agreed and withdrew his proposed rejections. Uniloc did not argue a new construction as insinuated by Defendants' brief, which is apparent when the reexamination file history is read in context, as opposed to Defendants' selective sound bites. Since Uniloc did nothing more than apply *Uniloc I*, the Court should adopt the construction of "licensee unique ID" affirmed by the Federal Circuit.

---

[16] See the Supplemental Supporting Declaration of Steven W. Hartsell at Exh. G.

### B. The Court is not obligated to adopt the Examiner's NIIRC statement

Defendants argue that the Court must adopt the Examiner's reasons for allowance. Such a position is unsupported by the case law. *Salazar v. Procter & Gamble Co.,* 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("the examiner's unilateral remarks alone do not affect the scope of the claim, let alone show a surrender of claimed subject matter."); *Whetstone Elecs., LLC v. Xerox Corp.*, No. 6:10-cv-278, 2011 U.S. Dist. LEXIS 89264, *25-26 n.7 (E.D. Tex. Aug. 10, 2011) ("[t]he Court does not find the examiner's unilateral statements dispositive in either instance. Such a situation demonstrates the danger of relying on the prosecution history to limit the scope of the claims, absent clear and unmistakable language of exclusion or disavowal."). This is especially true in the present case where the Examiner expressly acknowledged that a Patent Office construction that is inconsistent with the Federal Circuit's construction is unreasonable.[17] Nevertheless, in his NIIRC statement describing the inputs for a licensee unique ID, the Examiner prohibited the use of any information specific to the computer, even if combined with information unique to the user (such as user name or product key). This directly conflicts with *Uniloc I*, which observes that computer specific information cannot be the sole basis for the licensee unique ID.

### C. Uniloc did not disclaim the inputs used in Hellman

As explained in Uniloc's opening brief (and not disputed by Defendants), Hellman discloses a system that ties authorization codes to specific computers.[18] Therefore, Hellman utilizes platform related user information as the sole basis to generate an authorization code. Uniloc brought this to the Examiner's attention and explained that Hellman does not disclose a "licensee unique ID" under *Uniloc I* because the authorization code is not derived from any information unique to the user (*i.e.*, Hellman uses inputs that are "based *solely* on platform-related user information"). However, this does not mean that the Hellman inputs are "disclaimed" and can never be used in the generation of a

---

[17] UNI076154; Opening Br. at pp. 25-26.
[18] See Opening Br. at pp. 4-6.

9

licensee unique ID – they just cannot be used exclusively. A "licensee unique ID" satisfying *Uniloc I* could be constructed using Hellman's inputs along with additional information unique to the user, such as a user name or product key.

### D. In the alternative, if the Court feels clarification is necessary, it should be guided by the express observations in *Uniloc I*

Defendants argue that the Federal Circuit's construction of "licensee unique ID" "is not sufficient to apprise the jury of the proper scope of the '216 Patent."[19] The Federal Circuit might disagree with that sentiment because, as noted above, the Court affirmed the district of Rhode Island's construction of "licensee unique ID" despite making certain observations.

Uniloc did not modify the Federal Circuit's construction or observations during reexamination. Rather, Uniloc applied the Federal Circuit's *Uniloc I* opinion to show certain references did not comport with that opinion. There is no reason to abandon or alter this vetted construction as Defendants have failed to point to any statement in the reexamination that conflicts with *Uniloc I*. However, if the Court concludes that additional clarification is necessary for "licensee unique ID," the Court should look to the language in *Uniloc I*. Specifically, a "licensee unique ID" is "a unique identifier associated with a licensee" that (1) "can be, but is not limited to, personally identifiable information about the licensee or user" which "could encompass vendor-supplied information" such as a product key and (2) "cannot be based *solely* on platform-related user information." *Uniloc I*, 290 Fed. App'x. at 343-344.

### IV. CONCLUSION

For the reasons stated above, Uniloc respectfully requests the Court reject Defendants' proposed construction and decline to alter the constructions affirmed by the Federal Circuit.

---

[19] Defendants' Br. at p. 18.

| | |
|---|---|
| Dated: October 7, 2011. | Respectfully Submitted: |

/s/ Steven W. Hartsell
Edward R. Nelson, III
Texas State Bar No. 00797142
Barry J. Bumgardner
Texas State Bar No. 24041918
Steven W. Hartsell
Texas State Bar No. 24040199
S. Brannon Latimer
Texas State Bar No. 24060137
Jaime K. Olin
Texas State Bar No. 24070363
**NELSON BUMGARDNER CASTO, P.C.**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111
(817) 377-3485 (fax)
enelson@nbclaw.net
barry@nbclaw.net
shartsell@nbclaw.net
blatimer@nbclaw.net
jolin@nbclaw.net

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
**WARD & SMITH LAW FIRM**
111 West Tyler St.
Longview, Texas 75601
Tel: (903) 757-6400
Fax: (903) 757-2323
jw@wsfirm.com
wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFFS
UNILOC USA, INC. AND
UNILOC SINGAPORE PRIVATE LIMITED**

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Steven W. Hartsell