UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC. and<br>UNILOC SINGAPORE PRIVATE LIMITED, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIV. ACTION NO.: 6:10-CV-373 |
| (1) SONY CORPORATION OF AMERICA;<br>(2) SONY DADC US INC.;<br>(3) ACTIVISION BLIZZARD, INC.;<br>(4) ASPYR MEDIA, INC.;<br>(5) BORLAND SOFTWARE CORP.;<br>(6) McAFEE, INC.; and<br>(7) QUARK, INC., | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | JURY TRIAL DEMANDED |
| Defendants. | § | |

**DEFENDANT MCAFEE, INC.'S MOTION TO DISMISS**

## I.      INTRODUCTION

McAfee requests that the Court dismiss Uniloc's action against McAfee because Uniloc

has reneged on its promise to the Court and McAfee to voluntarily dismiss McAfee when Uniloc

conceded that the McAfee source code did not infringe.  Instead of living up to its word, Uniloc

is improperly using the pendency of this action as the basis to obtain payment from McAfee.

Uniloc proposed, and this Court adopted, an "opt-in" system where defendants could

provide early source code disclosure.  In exchange, *Uniloc agreed to dismiss any defendant if*

*Uniloc's review of the source code showed that the software did not infringe*.  Uniloc promised

that "[i]f a defendant believes that they have a lock-down noninfringement defense and they

want to provide us voluntarily their source code and demonstrate that non-infringement defense,

*we will cut them loose if they do not infringe*."  Ex. 1, April 26, 2011 Status Conference

Transcript at 21:6-12.  The Court adopted Uniloc's proposal, stating that "[t]he Court hopes these modifications *will promote early dismissal of non-infringing Defendants*.…"  May 20, 2011, Order re Schedule, Dkt. No. 126, at 6.

After receiving Uniloc's PICs and a list of 139 products, McAfee determined that the charted activation functionality was used by a handful of McAfee consumer products on the list of 139.  McAfee provided Uniloc a list of the identified consumer products and informed Uniloc that discovery was limited to those products under this Court's rules and that the other products on the list of 139 were not subject to discovery.  Uniloc did not dispute this fact.

McAfee then opted in to the early resolution system, provided the required financial information for the identified consumer products, and allowed Uniloc to review the accused source code for those products on two occasions.  At the mediation and second source code review, Uniloc stated that if the source code did not infringe it would dismiss McAfee.

Over two months ago Uniloc concluded that the McAfee source code *did not infringe*. Nevertheless, Uniloc refuses to "cut McAfee loose" despite its promises to the Court and McAfee.  Worse, Uniloc would not dismiss McAfee without some payment.

Uniloc's excuse is that it cannot dismiss McAfee because it has "concerns" about certain McAfee Enterprise products (1) that Uniloc was or should have been aware of before it sued McAfee; (2) some, but not all of, of which Uniloc identified in the list of 139 submitted with Uniloc's PICs but Uniloc never charted; and (3) that Uniloc has never asserted were similar to the products that were charted.  Uniloc first voiced these "concerns" only after it concluded that all charted consumer products did not infringe.

This is not a situation where the parties seek clarification of a long-running dispute. Uniloc did not claim it was entitled to a royalty for or discovery of these additional products until after it concluded that *the accused activation functionality does not infringe*.  Further, Uniloc has not and cannot claim that the additional products operate in the same or reasonably similar fashion to the charted functionality because Uniloc has already concluded that the charted functionality does not infringe.  Thus, Uniloc has to assert a different infringement theory, but Uniloc has refused to identify a valid infringement theory for the additional products.

Finally, Uniloc cannot show good cause to have these additional Enterprise products added to the case.  Uniloc has admitted that its "concerns" about these additional products resulted from reviewing McAfee's website after it conceded that the source code did not infringe.  If Uniloc wanted the Enterprise products in the case it could have and should have charted them.  McAfee has now been prejudiced because it was not able to take into account Uniloc's still undisclosed new theories during claim construction proceedings.

McAfee requests that the Court order Uniloc to do what Uniloc should have done and promised the Court it would do long ago – dismiss McAfee from this action.

## II.   FACTUAL BACKGROUND

### A.   Uniloc's Infringement Contentions Lacked Any Good Faith Basis

On June 3, 2011, Uniloc served Infringement Contentions consisting of a single claim chart and a list of 139 McAfee products. Ex 2.  The single claim chart included screen shots that, although unlabeled, McAfee identified as showing an activation module used in CD-versions of certain McAfee consumer products. *See id.*, Ex. A at 3.  Only a handful of the products on

Uniloc's list used the charted activation module, which by itself raises significant issues about the basis Uniloc had in bringing this action

Despite Uniloc's inadequate contentions, McAfee studied the sole infringement chart and identified all McAfee products that included the functionality shown in that chart.  Ex. 3, June 24, 2011, Ltr. from Benson to Etheridge at 2.[1]  McAfee provided Uniloc a complete list of all McAfee products that included that functionality.  *Id.*

McAfee also provided the financial disclosures as ordered by the Court for those, and only those, products, and informed Uniloc that "McAfee does not plan to provide discovery on any other products" beyond those listed in the June 24 letter.  *Id.*   Uniloc did not dispute McAfee's limitation on the scope of discovery.

### B.      McAfee Opts In to Early Source Code Review To Obtain an Early Dismissal

A week later on June 30, 2011, McAfee informed Uniloc that "McAfee has elected to voluntarily disclose the relevant source code *for the products identified in our June 24, 2011, letter.*"  Ex. 4, June 30, 2011, Ltr. from Leventhal to Etheridge, at 1 (emphasis added).  Once again, Uniloc did not object in any way to McAfee's definition of the relevant products or request discovery on any other products.

On July 27, 2011, Uniloc's expert reviewed McAfee's source code for over 4 hours. Uniloc did not object in any way at or after the source code review that McAfee's source code production did not cover all relevant products, nor did Uniloc request discovery on any other products.

---

[1] Exhibit A to the letter, which included confidential financial information, is not included with the Exhibit.

On August 4, 2011, at a mediation, McAfee asked Uniloc about the status of its review of McAfee's source code. Uniloc asserted it was not complete because some files referenced in the produced source code were missing and would need to be reviewed. Ex. 5, Declaration of Carter Hopkins at ¶ 4; *see also* Ex. 6, e-mail chain between Latimer and Leventhal, at 2. McAfee agreed to produce whatever software Uniloc asserted was missing. *Id.* Once again, Uniloc did not suggest that McAfee's source code production did not cover all relevant products, nor did Uniloc request discovery on any other products.

MeAfee's counsel asked and Uniloc's counsel confirmed that Uniloc would dismiss McAfee if it concluded there was no infringement after the production of the missing source code files. Hopkins Decl. at ¶ 5. McAfee then asked what basis Uniloc had for the original list of 139 products. *Id.* at ¶ 6. Uniloc stated that its contentions were tied to the software charted and not to the list. *Id.* In fact, Uniloc's counsel refused to address the list of 139 products, stating that it was generated by prior counsel. *Id.*

Thus, Uniloc's counsel specifically confirmed that the scope of discovery if the case went forward was limited to the products that used the activation software under review. *Id.* Taking Uniloc at its word, McAfee volunteered not only to locate and produce any missing source code files related to the already-produced source code, but also to make McAfee engineers available to Uniloc to answer any remaining questions. Ex. 6.

On August 30, 2011, McAfee provided Uniloc access to the source code, access to McAfee engineers, **and** a written and oral tutorial on the relevant functionality to assist Uniloc's review. Hopkins Decl. at ¶ 7. Uniloc's counsel again confirmed that McAfee would be dismissed if its review of the additional code showed no infringement. *Id.* at ¶ 8. Uniloc's

counsel stated that it had plenty of defendants that it knew infringed so it would not pursue a defendant that did not. *Id.* Uniloc's counsel then confirmed its promise that if Uniloc concluded that the source code being reviewing did not infringe, it would dismiss McAfee. *Id.* Uniloc's counsel stated that it would make its determination and get back to McAfee within a week. *Id.* at ¶ 9.

Uniloc made no objection during or after its source code review that the source code was insufficient or did not cover all relevant functionality. Once again, Uniloc gave no indication that it believed any other products beyond those for which it was reviewing source code were relevant.

### C. Uniloc Concedes McAfee does not infringe BUT Refuses to Dismiss McAfee

Two weeks later, Uniloc conceded that the charted functionality did not infringe. *See, e.g.* Ex. 7, Sep. 12, 2011, Ltr. from Bumgardner to Benson. In fact, Uniloc requested clarification regarding products that functioned the same way as the reviewed source code so Uniloc could "remove them from our list." *Id.*; *see also* Ex. 8, Sep. 19, 2011 Ltr. from Benson to Bumgardner (confirming that McAfee did not owe "any documents, interrogatory answers or a 30b6 witness at this time because Uniloc is no longer accusing the McAfee software that Uniloc accused and charted.").[2] But, rather than honor the promise to the Court and to McAfee, Uniloc refused to dismiss McAfee. Ex. 7. Instead, Uniloc stated that it has "concerns" about additional McAfee products. *Id.*

Uniloc stated that "probing McAfee's website reveals other products that use a license key for activation" and listed 16 **additional products**, specifically including certain McAfee

---

[2] This statement, made by McAfee's counsel, was not rebutted in any subsequent e-mail by Uniloc's counsel.

enterprise products.  *Id.*  This communication was the **first time** Uniloc ever suggested that it believed products beyond those listed in McAfee's June 24, 2011, letter were at issue.  Simply put, Uniloc never mentioned other products or even suggested it believed McAfee's financial or source code disclosures were incomplete until **after** it had concluded that all accused and charted products did not infringe.

McAfee's counsel immediately confronted Uniloc's counsel regarding why it reneged. Uniloc's counsel asserted that some of McAfee's enterprise products "concerned" Uniloc. McAfee's counsel said it would not even consider reviewing the products unless Uniloc would provide a basis for Uniloc's concerns.  Uniloc's counsel stated only that these products use a license key for activation.  However, the Asserted Claims do not recite "using a license key."  In fact, the background section of the '216 Patent includes examples of prior art methods for "using a license key" in activation, and Uniloc has already concluded that the accused McAfee functionality, which "uses a license key," does not infringe.

McAfee's counsel said that simply using a license key was no basis to assert infringement and demanded the basis for Uniloc's "concerns."  Uniloc's counsel agreed to check with his team to determine whether there was any other basis.  After internal consultation with his team, Uniloc's counsel stated that he had "no further information" regarding any actual infringement theory.  Ex. 9, e-mail chain between Bumgardner and Benson.

At the same time it refused to honor its promise to dismiss McAfee, Uniloc reported to the Court that its source code production plan "has shown great success with regard to the defendants who meaningfully participated in the process…."  Ex 10, October 19, 2011, *Markman* Hearing Transcript at 5:12-25.  As detailed above, McAfee's participation has been the

epitome of "meaningful."   McAfee hosted Uniloc for a tutorial and two source code review sessions, after the second of which Uniloc concluded McAfee did not infringe.   Uniloc's treatment of McAfee cannot be reconciled with its statements to the Court.

## III.   ARGUMENT

Uniloc is effectively treating this case like a game of Scrabble, seeking to trade in its losing tiles for a brand new set.   Uniloc is using its recent "concerns" as an excuse to avoid following through on its promise to dismiss, in hopes of obtaining some settlement.   Moreover, as discussed in detail below, Uniloc cannot add additional products to the case at this late stage under the Court's discovery case law.   McAfee therefore requests that the Court order Uniloc to honor its promise and dismiss McAfee.

### A.   Uniloc has Refused to Honor its Promise to the Court to Dismiss McAfee

Uniloc has repeatedly promised the Court and McAfee that it would dismiss a defendant if it concluded after source code review that the defendant did not infringe.   It has been over two months since Uniloc conceded after two source code review sessions that the McAfee source code *does not infringe*.   Uniloc never mentioned that it had "concerns" about additional McAfee Enterprise products until **after** it concluded that the accused products do not infringe.   On this basis alone, Uniloc should be ordered to dismiss McAfee.

### B.   Uniloc Should Not Be Permitted to Expand the Case

This Court has consistently held that a plaintiff cannot properly place products or services that function in different manners within the proper scope of discovery simply by listing product names.   *See, e.g.*, *Orion IP, LLC. v. Staples, Inc.*, No. 2:04-CV-297, *3-4 (E.D. Tex. July 7, 2005) (Davis, J.) ("*Orion I*") (stating that defendants "understandably balked" when plaintiff

- 8 -

sought discovery on websites generally named but not specifically charted); *Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, *5 (E.D. Tex. Jan. 21, 2010) (Love, M.J.) (concluding plaintiff's P.R. 3-1 disclosures were insufficient because the P.R. 3-1(c) charts failed to address all named instrumentalities). Uniloc's original list of 139 products and its new list of additional products for which it has "concerns" do not and cannot expand this action without corresponding charts setting forth infringement theories for those products. Moreover, Uniloc walked away from the original list at the mediation.

The only instance when a plaintiff may be entitled to discovery beyond products actually charted is "when: 1) the infringement contentions give notice of a specific theory of infringement; and 2) the products for which a plaintiff seeks discovery operate in a manner reasonably similar to that theory." *Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07-cv-108, Dkt. No. 141, slip op. at 3 (E.D. Tex. Sep. 2, 2009) (Love. M.J.) (citing *Honeywell Int'l, Inc., v. Acer America Corp.*, No. 6:07-cv-125, 2009 WL 274829, *6 (E.D. Tex. Feb. 5, 2009)). Thus, discovery is limited to charted products and products functioning in the same or reasonably similar manners as the charted functionality. *See id.*

### 1.    The Additional Products Cannot be Linked to Uniloc's Sole Infringement Chart

Uniloc has no argument that its sole infringement chart implicates the additional Enterprise products for which it now claims it has "concerns." Uniloc has not alleged that any of those additional products function in the same or similar manner to the charted activation functionality. *See* Section II.C, above. Moreover, if any of the additional products did function in the same or reasonably similar manner to what Uniloc has already reviewed, then discovery would still not be appropriate because Uniloc has already conceded that such activation

functionality does not infringe.  Simply put, Uniloc can seek to show the additional products infringe only by setting forth a new infringement theory, and it has not.  *See, e.g., Fenner Investments, Ltd. v. Juniper Networks, Inc.*, 236 F.R.D. 309, 311 (E.D. Tex. 2006) (Love, M.J.).

Uniloc's concession that the charted software does not infringe brings into serious question Uniloc's original basis in suing McAfee in the first place.  Moreover, Uniloc can offer no good-faith basis to assert that the vast majority of the 139 listed products infringe.  Most of those products have nothing to do with the CD-based activation module addressed in Uniloc's sole infringement chart.  Even worse, a simple review of McAfee public information shows that many of these products could not be relevant to the '216 Patent under any theory.  For example, public documentation on McAfee's website for "SaaS Web Protection," one of the listed products, states that "McAfee SaaS Web Protection *has no system requirements because it is an online service.*"  Ex. 11.[3]  Uniloc could not have had any good faith basis to believe that a service without a local software component could be relevant to the '216 Patent claims, which require an activation process with local and remote software components.

### 2.    Using a "License Key for Activation" is Not an Infringement Theory

Uniloc may argue that it is entitled to discovery on anything that uses a "license key for activation," but this Court does not permit discovery based on such high-level generalities.  Uniloc is entitled to discovery only for products functioning in the same or reasonably similar manner to the "specific theory of infringement" it has charted.  *See Nidec Corp.*, No. 6:07-cv-108, slip op. at 3.  A <u>specific</u> theory of infringement is not an abstract concept; rather a specific theory of infringement is "specifically where each element of each asserted claim is found within

---

[3]  Available at http://www.mcafee.com/us/products/saas-web-protection.aspx (select "System Requirements").

each Accused Instrumentality." *See Southwire Co. v. Encore Wire. Corp.*, No. 6:09-cv-289, slip op. at 2 (E.D. Tex. Sep. 29, 2010) (Davis, J.) (noting P.R. 3-1(c) sets the standard for what is required for specific theory of infringement).

The Asserted Patent Claims do not broadly recite using a "license key for activation." Uniloc's own two-paragraph description of the claimed subject matter in its claim construction brief describes, among other elements, generating a local licensee unique ID, generating a remote licensee unique ID, and providing full, unrestricted use of the software if the two unique ID's match, where both generation steps use a summation algorithm and both have identical inputs with at least one input unique to the user. *See* Dkt No. 222 at 1-2.  Notably, this two-paragraph description does not even mention a "license key." *See id.*  Thus, Uniloc's sole infringement chart does not open the door to discovery on all products that use a "license key for activation."

Further demonstrating the improperly broad nature of Uniloc's demand for information on anything that uses a "license key for activation" is that this criteria encompasses undisputed prior art and noninfringing systems. The *very first* example of background prior art in the '216 Patent specification is a user entering a "registration number" (i.e., license key for activation) to activate the software.  Ex. 10, '216 Pat., col. 1, lns. 11-19.  Further, the McAfee products that Uniloc <u>concedes</u> do not infringe use a license key for activation.  Thus, Uniloc cannot claim that simply noting that a system uses a license key for activation is sufficient to set forth a theory of infringement for the Asserted Claims and cannot credibly claim that it is entitled to discovery on any system that uses a "license key for activation."

### 3.    Uniloc Never Requested Discovery on the Additional Products Until After it Concluded that the Accused Products Do Not Infringe

Finally, Uniloc should be barred from seeking such discovery because Uniloc acquiesced to McAfee's view of the scope of relevant products and McAfee relied on that acquiescence. Specifically, McAfee informed Uniloc of its view on the products implicated by Uniloc's infringement contentions when it provided its initial production of financial information in June. *See* Section II.A, above.  Uniloc accepted McAfee's financial information and conducted two rounds of source code review without comment, <u>never indicating over several months that it believed that either production was improperly limited.</u>

McAfee's counsel specifically demanded that Uniloc provide an explanation for its 139 product list and Uniloc's counsel disavowed any reliance on that list, stating it was the work of previous counsel. *See* Section II.B, above.  The Court has noted in the past that a defendant "cannot lay behind the log until late in the case" where a disagreement exists between the plaintiff and defendant regarding the scope of the infringement contentions. *See Orion IP, LLC. v. Staples, Inc.*, 407 F.Supp.2d 815, 817-18 (E.D. Tex. 2006) (Davis, J.) ("*Orion II*").  Here, through its silence in response to McAfee's letter regarding the scope of discovery, its acceptance without comment of McAfee's financial information and source code production, and its affirmative disavowal of the "product list" included with the infringement contentions, Uniloc represented to McAfee that there was **no** dispute regarding the scope of discovery.  Uniloc should not be permitted at this late stage to suddenly manufacture a "concern" simply to create a tactical advantage.

#### C.      Uniloc Cannot Show Good Cause to Add Additional Products

Uniloc has repeatedly refused to even informally provide any legitimate infringement theory to McAfee for the additional Enterprise products for which it is seeking a royalty from McAfee.  *See* Section II.C, above.  Without an infringement theory for these products, Uniloc has no basis to now add them to this action.  For that reason alone, McAfee's motion should be granted.

If Uniloc at this late date desires to add new differently-functioning products to the case, it must first show the Court good cause.  Factors relevant to whether "good cause" is present are: "1) the explanation for the failure to meet the deadline; 2) the importance of the amendments; 3) potential prejudice in allowing the amendments; and 4) the availability of a continuance to cure such prejudices."  *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, *2 (E.D. Tex. Aug. 18, 2009) (citing *Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-cv-434, 2009 WL 166555, *1 (E.D. Tex. Jan. 16, 2009)).

Uniloc cannot demonstrate that any of these factors would favor permitting Uniloc to add new infringement theories at this late stage.  Uniloc's counsel admitted in a September 12, 2011, e-mail that Uniloc's recent "concerns" regarding the additional products was based on "**probing McAfee's website**."  Ex. 7.  This "probing" of a public website is something that Uniloc could have and should have done before Uniloc served its original Infringement Contentions.

"When information is publicly available, the Patent Rules require a plaintiff to set forth specific theories of infringement at the outset of the case."  *Orion I*, No. 2:04-CV-297, at *3 (citing *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (Davis, J.)).  Uniloc cannot show good cause to amend when its current allegations

are based on information on public websites "that Plaintiff failed to take advantage of when making its initial disclosures." *Id.*

Moreover, McAfee would be greatly prejudiced if Uniloc were allowed to add additional products based on new infringement theories at this stage.  Claim construction proceedings have been completed, and the Court has issued a preliminary ruling.  Because McAfee has long known that the accused McAfee activation functionality did not bear even a passing resemblance to the Asserted Claims, it was not an active participant in the claim construction process. McAfee would be prejudiced by not having an opportunity to assess claim construction issues relevant to any new theory to be set forth by Uniloc and advocate an appropriate position, especially since Uniloc *still* has not provided any new infringement theory.  *Compare to CEATS, Inc. v. Continental Airlines, Inc.*, No. 6:10-cv-120, Dkt. 633, slip. op. at 6 (E.D. Tex. Aug. 5, 2011) (Davis, J.) ("Finally, and importantly, CEATS has had enough time to prepare for any new claim construction issues before the Markman hearing and continues to have ample time to complete any additional necessary discovery, modify its theories of infringement or shift its trial strategy based on the amendments.").

## IV.    CONCLUSION

Uniloc's Infringement Contentions include a single claim chart.  Uniloc has admitted that the activation functionality in that chart ***does not infringe***.  Uniloc now reneges on its promise to dismiss McAfee on the pretense that it has "concerns" about additional products that it never mentioned, let alone charted, prior to concluding that the accused products ***do not infringe***. Uniloc is not entitled to seek discovery on new, differently-functioning products because it has no good faith basis to do so.  McAfee therefore requests that the Court require that Uniloc do what Uniloc long ago promised it would do – dismiss McAfee with prejudice.

Respectfully submitted,


Date:  November 18, 2011          By  */s/ Christopher R. Benson*

Christopher R. Benson (Texas Bar No. 02164020)
cbenson@fulbright.com
Attorney-in-Charge
FULBRIGHT & JAWORSKI L.L.P.
600 Congress Avenue, Suite 2400
Austin, Texas 78701
Tel.:   (512) 536-5201
Fax:   (512) 536-4598

Eric B. Hall (Texas Bar No. 24012767)
ehall@fulbright.com
Daniel S. Leventhal (Texas Bar No. 24050923)
dleventhal@fulbright.com
Daniel A. Prati (Texas Bar No. 24070446)
dprati@fulbright.com
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:   (713) 651-5151
Fax:   (713) 651-5246

***ATTORNEYS FOR DEFENDANT MCAFEE, INC..***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 18, 2011, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

<u>          /s/ Daniel S. Leventhal          </u>

**CERTIFICATE OF CONFERENCE**

Although the parties do not believe a Certificate of Conference is necessary under L.R. CV-7(h) for this Motion to Dismiss, lead counsel for McAfee, Chris Benson, and lead counsel for Uniloc, Ed Nelson, conferred by telephone on November 17, 2011.  Mr. Benson stated that McAfee expected Uniloc to dismiss McAfee because Uniloc had agreed to do so if it concluded that the accused products did not infringe.  Mr. Nelson stated the Uniloc believed it was entitled to discovery on additional McAfee products.  Mr. Benson disputed that Uniloc was entitled to discovery on additional McAfee products because Uniloc did not chart those products or assert that they operate in a manner the same or reasonably similar to what was charted.  The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

<u>          /s/ Christopher R. Benson          </u>